UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18- 60973-CV-ALTMAN
MAGISTRATE JUDGE REID

STEVEN DOUGLAS SHERMAN,

Plaintiff,

v.

SERGEANT QUEST, et al.,

Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Before the Court are two Motions for Summary Judgment. [ECF Nos. 114, 117]. The first Motion was filed by Defendant Henri, a nurse at Broward County Main Jail. [ECF No. 114]. The second was filed by Defendants Quest, Anda, Maynes, Morancy, and Dieuvelhomme (collectively "the Defendant Officers"), who are correctional officers at Broward County Main Jail. [ECF No. 117].

In this action, Plaintiff raised a claim of deliberate indifference to serious medical needs based on Defendant Henri's alleged failure to adequately treat Plaintiff by drafting an inaccurate medical report after a staff-on-inmate altercation,

which resulted in Plaintiff not receiving x-rays, emergency medical treatment, or a referral to a doctor. [ECF Nos. 13, 18, 20].

With respect to the Defendant Officers, Plaintiff raised claims of excessive force and failure to intervene to stop the application of excessive force. [*Id.*] Additionally, Plaintiff alleged Defendant Quest retaliated by relocating him to a windowless cell to limit his access to medical care so that he could discourage Plaintiff from filing additional grievances about the altercation at issue. [*Id.*].

This matter was referred to the Undersigned for consideration and report on dispositive matters. [ECF No. 38]. As set forth below, Defendant Henri's Motion should be **GRANTED** [ECF No. 114],  and the Defendant Officers' Motion should be **GRANTED IN PART AND DENIED IN PART**. [ECF No. 117].

## II. Factual Background

A. Summary of Allegations

In his Amended Complaint, Plaintiff alleged that the Defendant Officers entered his cell and "positioned themselves" around him as he sat on his bed. [ECF No. 13 at 7-8]. Upon Defendant Quest's order to "[g]et his ass," the Defendant Officers beat him by punching his face "dozens of times," dragging him to the ground, and stomping on his head and upper body. [*Id.* at 8-9]. As injuries, Plaintiff suffered "excruciating pain," "head injuries," broken ribs, a concussion, "severe

headaches which cause" blurred vision, and "frequent mild to severe anxiety/panic attacks." [*Id.* at 9, 11].

After the incident, Defendant Henri, a nurse at the Broward County Main Jail, allegedly appeared to be waiting to treat Plaintiff, which Plaintiff assumed demonstrates Defendant Henri's involvement in a cover-up. [*Id.* at 9]. Plaintiff told Defendant Henri "that he was certain some of his ribs were broken" and pointed out that the cuts on his face would not stop bleeding. [*Id.* at 9]. Plaintiff also submitted that Defendant Henri "failed to write any event report" or otherwise order emergency medical services. [*Id.* at 9-10].

Afterwards, Plaintiff alleged that he filed a grievance regarding the altercation but was relocated to another cell, which Plaintiff claimed had little to no visibility. [*Id.* at 10]. Plaintiff contended Defendant Quest did this to conceal Plaintiff's injuries while his injuries healed and to delay access to medical treatment as a means of discouraging Plaintiff from filing additional grievances against Defendant Quest. [*Id.* at 10-11].

B. Defendants' Statement of Material Facts

The Defendant Officers submit that they entered Plaintiff's cell pursuant to Defendant Quest's orders to inspect Plaintiff's cell for any contraband tools that could have been used to throw feces or urine at other inmates. [ECF No. 117-2 at 2]. Plaintiff was not in handcuffs. [*Id.* at 2].

Defendant Quest informed Plaintiff they were there to "shakedown" his cell and ordered Plaintiff to submit to being handcuffed. [*Id.* at 2]. Rather than submit, Plaintiff reportedly "took off his shirt, got into an aggressive fighting stance with clenched fists and said, 'I (sic) got full blow[n] aids, let's f[---]ing go[,] bro!'" [*Id.* at 2]. Defendant Quest told Plaintiff "they were no threat" and "attempted to verbally calm" Plaintiff. [*Id.* at 2]. Instead, according to the Defendant Officers, Plaintiff lunged at Defendant Maynes with both arms aimed at his facial area. [*Id.* at 2].

Defendant Morancy "responded by striking Plaintiff in the abdominal area and attempted to pull him to the ground." [*Id.* at 3]. Defendants Maynes and Morancy "struggled" to obtain Plaintiff's compliance so that he could be handcuffed. [*Id.* at 3].

Defendant Quest repeatedly told Plaintiff to comply and stop resisting during the struggle. [*Id.* at 3]. Once Plaintiff was handcuffed, Defendants stopped striking him. [*Id.*].

While conducting routine medical rounds, according to Defendant Henri, he received a call for him to go to the 8th floor to attend to Plaintiff. [ECF No. 114 at 2]. A surveillance video was filed under seal. [ECF No. 116]. Defendant Henri submits he could not see what transpired in Plaintiff's cell, even if he had access to surveillance footage, because the surveillance camera had an obstructed angle into Plaintiff's cell. [*Id.* at 2, 4]. Defendant Henri evaluated Plaintiff and did not observe

4

"uncontrolled blood dripping" or pooled blood. [*Id.* at 3]. Defendant Henri spoke with Plaintiff and took his vital signs, which were within normal range. [*Id.*]. He noticed a "small cut" above Plaintiff's left eyebrow and "a bump" on Plaintiff's forehead. [*Id.* at 3]. After treating Plaintiff's wounds with an ointment to block the bleeding, Defendant Henri concluded that Plaintiff did not need x-rays, stitches, or emergency services. [*Id.*].

Defendant Henri acknowledged that Plaintiff "expressed that he was in pain," so Defendant Henri provided Plaintiff with three Motrin and an ice pack. [*Id.*]. Defendant Henri further advised Plaintiff to write a sick call request if he felt worse or if the pain continued. [*Id.*]. Defendant Henri swears Plaintiff received treatment from other nurses and doctors and further asserts he did not see Plaintiff again with regard to the injuries in this action. [*Id.* at 4].

The Defendant Officers point out that Plaintiff filed grievances but did not identify Deputy Morancy or Deputy Dieuvelhomme in those grievances. [ECF No. 117-2 at 4]. Plaintiff received an inmate disciplinary report for his conduct during the altercation. [*Id.*]. He did not appeal the disciplinary committee's findings, which resulted in him losing his telephone privileges and being placed in "lockdown" for thirty days. [*Id.*].

The Defendant Officers further assert Plaintiff signed an affidavit admitting his assertions of excessive force were false. [*Id.* at 4]. Among the materials provided,

the Defendant Officers rely on an unsworn expert opinion from an individual who specializes in training officers on how and when to use force. [*Id.* at 4-5] (referring to [ECF No. 114-4]). Both parties also rely on the unsworn expert opinion of Nurse Kimberly M. Pearson. [ECF Nos. 117-2 at 3; 114 at 1, 4, 9-13] (citing [ECF No. 114-1]).

C. Plaintiff's Proposed Genuine Issues of Material Facts in Dispute

Throughout his Response, under penalty of perjury, Plaintiff denied making threatening remarks during the incident and further stated that the Defendant Officers initiated the attack in his cell. [ECF No. 123 at 3, 8, 10, 12-13]. Additionally, with respect to Plaintiff's written statement in which Plaintiff said his allegations of excessive force were untrue, Plaintiff claimed he "was forced to write" that statement because Defendant Quest "intercepted" the grievance and then confronted Plaintiff about it. [*Id.* at 16]. According to Plaintiff, Defendant Quest said he would "stomp [Plaintiff] to death and deploy his taser" if he did not rescind his allegations of excessive force. [*Id.* at 16].

As to his deliberate indifference claim against Defendant Henri, Plaintiff claims he told Defendant Henri that he could not "see straight," his "face and jaw" were in "a lot of pain," and his ribs were hurting. [ECF No. 124 at 4]. Plaintiff did not address whether Defendant Henri gave him pain medication or told him to alert medical officials if his pain continued or symptoms worsened. Plaintiff again asserts

6

that Defendant Henri failed to give an "immediate referral" or follow up to see a doctor or a nurse practitioner. [*Id.*]. Plaintiff also asserts that the use-of-force report photographs confirm that Defendant Henri knowingly wrote an inaccurate report of the injuries in order to conceal the fact that the Defendant Officers used excessive force. [*Id.* at 9] (referring to [ECF No. 124 at 38-42]).

### III. Standard of Review

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In reviewing a motion for summary judgment, this Court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)). Thus, a district court "'may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307).

7

Because summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" the moving party necessarily carries the burden. *See Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). Parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary judgment even though they would not be admissible at trial. *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting *Celotex*, 477 U.S. at 324).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am.*, 847 F.3d at 1331 (relying upon *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Great Am.*, 847 F.3d at 1331 (relying upon *Anderson*, 477 U.S. at 248). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). In sum, where no reasonable juror could find in the non-moving party's favor, summary judgment is appropriate. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

Lastly, in the summary judgment context, courts must construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

## IV. Discussion

A. <u>Defendant Officers' Motion for Summary Judgment [ECF No. 117]</u>

As a reminder, the claims against the Defendant Officers are for excessive force and failure to intervene. [ECF Nos. 13, 18, 20]. There is also a claim of retaliation currently pending against Defendant Quest. [*Id.*].

### *i. Exhaustion of Administrative Remedies*

Defendants Dieuvelhomme and Morancy argue summary judgment should be granted because Plaintiff failed to exhaust his administrative remedies by failing to appeal the denial of the grievance he filed with jail authorities. Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983…by a prisoner confined in any jail…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendants Dieuvelhomme and Morancy rely on this provision to argue Plaintiff is not entitled to relief. [ECF No. 117 at 5-7].[1]

---

[1] The other Defendant Officers do not raise an exhaustion defense in the instant Motion, and this is further evidenced by their Reply. [ECF Nos. 117, 126]. Nor did the other Defendant Officers preserve the affirmative defense in their answer. [ECF No. 32]. Therefore, it appears any exhaustion defense that may have existed was either waived or abandoned.

"In this circuit, the exhaustion defense should be raised in a motion to dismiss under Rule 12(b)." *Brooks v. Warden*, 706 F. App'x 965, 968 (11th Cir. 2017) (citing *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008)). And, when raised in a motion for summary judgment, an exhaustion defense should be treated as a motion to dismiss. *See Bryant*, 530 F.3d at 1374-75. If a court construes a motion as if it were brought under Rule 12(b), "it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion." *Id.* at 1376 (quoting 5C Charles Alan Wright & Miller, Federal Practice and Procedure § 1360 at 91 (3d ed. 2004)).

Accordingly, unless one of the exceptions set forth in Fed. R. Civ. P. 12(h)(2) and (3) apply, a party may not file a subsequent motion to dismiss "raising a defense or objection that was available to [them] but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). A failure-to-exhaust defense does not qualify under the exceptions provided under Fed. R. Civ. P. 12(h)(2) or (3). *See Brooks*, 706 F. App'x at 969-70.

In this case, Defendants Dieuvelhomme and Morancy previously filed a motion to dismiss arguing Plaintiff did not exhaust his administrative remedies because he did not identify them by name in his grievances. [ECF No. 74]. The motion was denied. [ECF No. 150]. They did not, as they appear to argue now, claim Plaintiff failed to exhaust his administrative remedies by failing to appeal the denial of grievances or disciplinary findings. *Compare* [*id.*], *with* [ECF No. 117 at 5-7].

10

Because they omitted this defense in their initial Rule 12(b) motion, Defendants Dieuvelhomme and Morancy forfeited this defense. *See Brooks*, 706 F. App'x at 969 ("[A]s a non-jurisdictional claim-processing rule, the exhaustion defense is subject to forfeiture under Rule 12(g)(2)").[2]

### ii. *Heck v. Humphrey Does Not Bar Plaintiff's Excessive-Use-Of-Force Claims*

The Defendant Officers contend *Heck v. Humphrey*, 512 U.S. 477 (1994) bars review of Plaintiff's excessive force claims because the claims necessarily "call into question the findings of the disciplinary committee[.]" [ECF No. 117 at 5].

They are mistaken. In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

"The Supreme Court has applied *Heck* to prisoners' claims challenging prison disciplinary actions[.]" *Richards v. Dickens*, 411 F. App'x 276, 278 (11th Cir. 2011) (citing *Edwards v. Balisok*, 520 U.S. 641, 646 (1997)). But it has done so only in cases where the disciplinary action involved the loss of good-time credits that would

---

[2] Within the instant Motion, Defendants Dieuvelhomme and Morancy re-raised their argument that Plaintiff failed to identify them by name in grievances. [ECF No. 117 at 5-7]. As the Court already resolved that exhaustion argument [ECF Nos. 149, 151], the Court need not re-visit it.

have shortened a prisoner's term of incarceration. *See Edwards*, 520 U.S. at 646-48 (holding *Heck* barred a prisoner's complaint because it would necessarily invalidate the loss of good-time credits); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (explaining *Heck* would bar claims that would necessarily shorten the length of confinement).

The Eleventh Circuit also has not extended *Heck* to apply to all disciplinary proceedings that might contradict disciplinary committee findings—only those that relate to the fact or duration of a prisoner's confinement. *See, e.g.*, *Richards*, 411 F. App'x at 278-79; *Roberts v. Wilson*, 259 F. App'x 226, 229 (11th Cir. 2007); *Robinson v. Satz*, 260 F. App'x 209, 212 (11th Cir. 2007).

Here, Plaintiff was not deprived of good-time credits. He was placed in disciplinary confinement (*i.e.*, "lockdown") and lost telephone privileges as a pre-trial detainee. [ECF No. 114-3 at 63, 209]. Without good-time credits or the like at issue, *Heck* is inapplicable. *See Wilkinson*, 544 U.S. at 81-82.

At any rate, success on Plaintiff's claim does not necessarily contradict the disciplinary findings, as it is logically possible that force was necessary to restrain Plaintiff, but the amount of force actually used was excessive. *See, e.g.*, *Dixon v. Hodges*, 887 F.3d 1235, 1240 (11th Cir. 2018) (reaching the same conclusion for a prisoner); *Dyer v. Lee*, 488 F.3d 876, 879-80 (11th Cir. 2007) (reaching the same

12

conclusion when challenging force used during an arrest). In sum, the claims are not *Heck*-barred simply because Plaintiff was disciplined for his conduct.

### iii. Excessive Force

*a. Substantive Law*

Stated broadly, "to prevail on a claim under [Section] 1983, a plaintiff must demonstrate that (1) the defendant deprived [plaintiff] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998)).

"Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to … convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citation omitted).

The excessive force inquiry for pretrial detainees includes two separate state-of-mind questions:

> The first concerns the defendant's state of mind with respect to his physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world. The second question concerns the defendant's state of mind with respect to whether his use of force was "excessive."

*Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) (emphasis in original omitted).

As to the first inquiry, "the defendant must possess a purposeful, knowing or possibly reckless state of mind[,]"accidental or negligent conduct will not suffice. *Id.* at 2472.

As for the second question, "a pretrial detainee must show only that the force purposefully or knowingly used against him was objectively unreasonable." *Id.* at 2473. This standard cannot be applied mechanically, and "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

A number of factors may bear on the reasonableness or unreasonableness of the force applied. *Id.* For example, courts may consider (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Id.* at 2473. This is not an exhaustive list of potentially relevant factors. *Id.*

*b. Analysis*

On their claim of excessive force, the Defendant Officers are not entitled to summary judgment. To begin, an inmate's sworn pleading may be sufficient to defeat a summary judgment motion if it creates a genuine issue of material fact. *See Wells v. Cramer*, 262 F. App'x 184, 187 (11th Cir. 2008). In fact, "a plaintiff's testimony cannot be discounted" "unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).

Plaintiff alleged he was compliant and seated on his bed after being ordered to do so. The Defendant Officers positioned themselves around him and attacked him upon Defendant Quest's command. If true, the Defendant Officers applied force knowingly and not in an accidental or neglectful manner. *See Kingsley*, 135 S. Ct. at 2472-73. Further, because the Defendant Officers assert they applied force only to restrain Plaintiff, there is no real dispute that they deliberately applied force. *See Kingsley*, 135 S. Ct. at 2472.

Next, the Court must address whether there is a genuine issue of material fact as to whether the Defendant Officers' use of force was objectively unreasonable.[3]

---

[3] The Defendant Officers incorrectly contend Plaintiff's excessive force claim is subject to the same standard as the Eighth Amendment even though he is a pretrial detainee. [ECF No. 117 at 14-15]; *but see Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019) (acknowledging

Plaintiff's account is vastly different from the Defendant Officers' account and, at this juncture, the Court must view any conflicting evidence in Plaintiff's favor. *See Furcron*, 843 F.3d at 1304 (explaining the evidence must be viewed in the non-moving party's favor). Thus, even if the Defendant Officers have "the most evidence" in this action, it is irrelevant. *See Sears*, 922 F.3d at 1207 ("The question on summary judgment is not about which side has offered the most evidence. Instead, that question is simply whether there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'").

There is no dispute that Plaintiff received some medical treatment immediately after the use of force. Because the Defendant Officers sought medical assistance, there is some evidence in the record that they made an effort to temper the severity of their already applied force. *See Cockrell v. Sparks*, 510 F.3d 1307, 1312 (11th Cir. 2007) (seeking medical assistance may suggest that officers acted in a good faith effort to temper the severity of their response).

But, Plaintiff's sworn account, viewed in his favor, supports his claim that there was no need to apply force in the first place and, therefore, the relationship between the need for force and the force actually applied was disproportionate. A reasonable officer in the Defendant Officers' position could not have perceived

---

Eleventh Circuit caselaw, which held pretrial detainees are subject to the same standard as Eighth Amendment excessive force claims, was overruled by *Kingsley v. Hendrickson*, 135 S. Ct. (2015)).

Plaintiff to be a substantial threat, if Plaintiff's version is accepted as true, because such an officer would have had the assistance of four other officers in a cell with a compliant detainee. Further, any security threat would have been contained only to Plaintiff's cell, rendering any threat to the security of the facility minimal even if Plaintiff had shown some resistance during the encounter—an allegation Plaintiff denies.

Lastly, regarding the extent of the injuries, the Defendant Officers assert that Plaintiff only "had a small cut on his left eyebrow" and "a small bump on the right side of his forehead" after the incident. [ECF No. 117-2 at 3]. In contrast, Plaintiff swore that he sustained "bruises and abrasions to his back," which were not reported, and a 2-inch gash on his head. [ECF No. 123 at 9-10]. Plaintiff also averred that he suffered two broken ribs, "back/neck injuries," two lacerations to his forehead, and a swollen eye and jaw. [*Id.* at 12-13].

In attempting to meet their burden, the Defendant Officers have a problem with the record provided. They relied upon Nurse Kimberly M. Pearson's unsworn expert opinion. [ECF No. 117-2 at 4] (referring to [ECF No. 114-4]).

Generally, unsworn expert opinions should not be considered on summary judgment. *See Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended* (Sept. 29, 2003); *see also Dudley v. City of Monroeville, Ala.*, 446 F. App'x. 204, 207 (11th Cir. 2011) ("Unsworn statements do not meet the

requirements of Rule 56, so the district court could not—and properly did not—rely on the content of the [unsworn] statement.").

The exception to this rule is when an expert verified or re-affirmed their opinion during a deposition or in an affidavit. *See, e.g.*, *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, 711 F. Supp. 2d 1348, 1368 (M.D. Ga. 2010) (collecting cases); *Goins v. Nationwide Mut. Fire Ins. Co.*, No. 8:11-CV-2771-T-27AEP, 2013 WL 12156470, at *2-*3 (M.D. Fla. Feb. 8, 2013) (same).

As Nurse Pearson's opinion was not verified or otherwise re-affirmed in a deposition provided to the Court, there is no basis to consider it.[4] *See Carr*, 338 F.3d at 1273 n.26. But even assuming Nurse Pearson's unsworn expert opinion could be relied upon on summary judgment, the unsworn opinion contradicts the Defendant Officers' assertions.

The expert detailed that officials documented Plaintiff having "facial bruising and pain in his left rib cage and that [Plaintiff] reported [the injuries being] due to an altercation with deputies" eight days after the March 8 incident with the Defendant Officers and further notes Plaintiff consulted with a dentist about his swollen jaw. [ECF No. 114-4 at 7, 9]. Critically, other parts of the record confirmed Plaintiff had left rib fractures. An x-ray confirmed it. [ECF No. 114-3 at 208].

---

[4] Similarly, the unsworn expert opinion of Ivan Rodriguez cannot be relied on to support the Motion. [ECF No. 114-2].

18

Counsel for the Defendant Officers even conceded that Plaintiff was "diagnosed with two broken ribs" during Plaintiff's deposition. [ECF No. 114-3 at 49]. And yet, the Motion and accompanying Statement of Undisputed Facts make no mention of fractured ribs.

Consequently, even if the Court could rely on the unsworn expert opinion provided, the expert opinion and the record as a whole support Plaintiff's account of his injuries.[5] *See Furcron*, 843 F.3d at 1304.

Viewed through that lens, because Plaintiff's version of events suggests there was no need to apply force, the extent of Plaintiff's documented injuries could lead a jury to find the Defendant Officers' use of force was so disproportionate that it was excessive. *See Kingsley*, 135 S. Ct. at 2473; *see also Hinson v. Bias*, 927 F.3d 1103, 1118 (11th Cir. 2019) ("[W]here the circumstantial evidence supports a dispute of material fact, [even when the plaintiff has no memory of what transpired,] we must conclude that summary judgment is inappropriate and allow the case to proceed to trial.").

The surveillance video recording also does not help the Defendant Officers on summary judgment. *See* [ECF No. 116]. It does not clearly show what happened in

---

[5] Similarly, because Plaintiff has contested the accuracy of Defendant Henri's medical report on the basis that it was prepared to assist the Defendant Officers in avoiding liability, Defendant Henri's report does not assist the Defendant Officers in showing no genuine issue of material fact exists. *See Sears*, 922 F.3d at 1208 n.4.

Plaintiff's cell. From what can be seen on the video, Plaintiff is escorted from his cell with officers close at his side who may or may not be providing him assistance in walking. While he does not appear to be bloodied, for no apparent reason, two of the Defendant Officers lowered Plaintiff's head just as Plaintiff was approaching the surveillance camera. By lowering Plaintiff's face just as he would have come into focus, the Defendant Officers cannot rely on it to show the extent of Plaintiff's facial injuries immediately after the incident.[6] A clearer image could have shown the extent of any bruising and swelling.

The record also includes photographs of the Plaintiff, which Plaintiff alleged were taken twenty minutes after Defendant Henri provided medical treatment. [ECF No. 117-1 at 12-13]. The photographs show some discoloration on Plaintiff's face that may be indicative of lacerations or bruising.

Sure, the record shows Plaintiff signed an affidavit admitting that his grievance against the Defendant Officers was false, Plaintiff, however, maintains that Defendant Quest threatened to "stomp" him to death if he did not recant his version of events by signing the affidavit. [ECF No. 123 at 16]. As credibility determinations are not appropriate on summary judgment, the Court must accept the

---

[6] Plaintiff asserted that Defendant Henri cleaned the blood off his face after the Defendant Officers' use of force. [ECF No. 123 at 4]. During his deposition, Plaintiff explained the video did not show blood on his face because the Defendant Officers hid his face by lowering it before he approached the camera. [ECF No. 114-3 at 118].

inference that is most favorable to Plaintiff. *See Jones*, 683 F.3d at 1292 (explaining credibility determinations are inapposite on summary judgment). If Plaintiff can prove at trial that he was intimidated into recanting his version of events, a genuine issue of material fact remains.

*iv. Qualified Immunity on Excessive Force*

*a. Applicable Law*

Qualified immunity, if applicable, serves as a complete shield to liability for government officials when they are sued in their individual capacities for engaging in discretionary functions. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003), *abrogated on other grounds by Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010)). Government officials, therefore, may either (1) seek summary judgment on qualified immunity grounds or (2) seek to have the complaint dismissed on qualified immunity grounds, prior to discovery, based solely on the allegations in the pleadings. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 n.6 (11th Cir. 2004).

To invoke qualified immunity, a public official must first demonstrate that he or she was acting within their discretionary authority. *Hinson v. Bias*, 927 F.3d at 1116. "The term discretionary authority covers all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Id.* (internal quotation marks omitted). A "bald

21

assertion" by a defendant that "the complained-of actions were ... within the scope of his discretionary authority" simply will not suffice. *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. Unit A July 1981)).[7]

Once the public officials has met this burden, then the burden shifts to the plaintiff to show that, with all allegations assumed as true, the allegations plausibly establish (1) the defendants violated plaintiff's constitutional rights and (2) that right was "clearly established." *See Cottone*, 326 F.3d at 1358. "[The] right [must be] clearly established…in light of the specific context of the case, not as a broad general proposition, at the time of the [public official's] actions." *Hinson*, 927 F.3d at 1116 (internal quotation marks omitted).

Courts are afforded significant "flexibility," as they may answer those inquiries "in either order" and even "determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all." *Maddox v. Stephens*, 727 F.3d 1109, 1120-21 (11th Cir. 2013).

*b. Analysis*

---

[7] Fifth Circuit cases decided prior to October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

The Defendant Officers failed to adequately invoke qualified immunity. To do so, they had to "first demonstrate that [they were] acting within the scope of [their] discretionary authority." *See Hinson*, 927 F.3d at 1116.

Rather than define how their challenged conduct meets that standard, the Defendant Officers simply conclude that "it is clear that [they] were performing discretionary duties when the incident occurred." [ECF No. 117 at 13, 15-17]. If that was sufficient, every officer could meet their initial burden for qualified immunity. Because the Defendant Officers provide only legal conclusions, the Defendant Officers have not met their initial burden and are, therefore, not entitled to qualified immunity. *See Estate of Cummings*, 906 F.3d at 940 (explaining entitlement to qualified immunity is not automatic and a "bald assertion" of discretionary authority is not enough).

Accordingly, because the Defendant Officers have not shown a genuine issue of material fact on the excessive force claim and failed to adequately plead their initial burden for qualified immunity,[8] summary judgment on the excessive force claims should be denied.

*v. Retaliation*

---

[8] Further demonstrating the issues with the Defendant Officers' Motion, their Motion omits any reference to Plaintiff's failure to intervene claims even though they are interrelated with the excessive force claims against them. As the failure to intervene claims are unchallenged, they should proceed to trial with the excessive force claims.

*a. Substantive Law*

Under the First Amendment, prison officials may not retaliate against an inmate for exercising the right of free speech. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). Pre-trial detainees, like prisoners, may raise claims of retaliation. *See, e.g.*, *Jacoby v. Mack*, 755 F. App'x 888, 890, 901-04 (11th Cir. 2018).

To state a retaliation claim, a plaintiff must show that (1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech, and (3) there was a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

An adverse effect on protected speech exists "if the allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [their] First Amendment rights." *Bennett*, 423 F.3d at 1254. Therefore, "an actual chill" on free speech is not necessary to prove a reasonable person would have likely been deterred. *Id.* at 1254-55.

*b. Analysis*

Liberally construed, Plaintiff's retaliation claim was based on his allegation that Defendant Quest relocated him to a secluded cell for a 15-day period without medical treatment. [ECF No. 13 at 11]. According to Plaintiff, Defendant Quest relocated him to this cell after Plaintiff filed a grievance on March 9, 2018, which

grieved the "beating in question," and detailed his "need for emergency medical treatment." [*Id.* at 10]. Again, liberally construing the allegations, Plaintiff asserted that relocation to another cell out of sight, allowed Plaintiff's injuries to heal and interfered with his access to medical treatment and consequently discouraged Plaintiff from continuing to file grievances. [*Id.* at 11].[9]

In the Motion, Defendant Quest argues Plaintiff failed to show an adverse action as a result of Plaintiff's grievance because Plaintiff received "considerable and attentive medical care after the March 8 incident." [ECF No. 117 at 18]. During Plaintiff's deposition, Plaintiff testified that he was moved to a cell with no window on March 10, two days after the incident. [ECF No. 114-3 at 136-37]. The record also confirms Plaintiff was relocated one day after his March 9 sick call request was submitted. [*Id.* at 203]; *see also* [*id.* at 129] (showing Plaintiff actually made his sick call request on March 9). Even though Plaintiff was relocated, medical officials conducted a muscular skeletal evaluation on March 11 pursuant to Plaintiff's sick call request. [*Id.* at 203-05]. During this consultation, medical officials documented that Plaintiff reported severe pain and facial swelling. [*Id.* at 204-05]. On March 16,

---

[9] To the extent Plaintiff might later argue that he intended to raise a claim of retaliation based on his assertions that Defendant Quest would stomp on him to death if he continued to file grievances, such a claim is not before the Court, as those new allegations are not in the operative complaint. *See, e.g.*, *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (explaining the non-moving party should have amended a complaint rather than raise a new claim in a response to a summary judgment motion); *O'Brien v. NCL (Bahamas) Ltd.*, 288 F. Supp. 3d 1302, 1306 (S.D. Fla. 2017) (collecting cases).

a radiological consultation uncovered no evidence of bone fractures in Plaintiff's face; however, evidence of rib fractures was found that day. [*Id.* at 206, 208]. Plaintiff also confirmed that he received Motrin and an ice pack and saw nurses making "med rounds" every day despite being relocated. [*Id.* at 134-35].

Plaintiff does not deny the veracity of this medical record [ECF Nos. 114-3 at 44-45, 100-01, 127, 143-44; 123], meaning the Court should accept that Plaintiff received treatment while he was housed in a windowless cell. *See* Fed. R. Civ. P. 56(e)(2). Viewing the evidence in Plaintiff's favor, a person of ordinary firmness would not have been deterred in filing grievances or pursuing sick call requests under the circumstances. *See Bennett*, 423 F.3d at 1254. Without an adverse action, summary judgment should be granted in Defendant Quest's favor as to Plaintiff's retaliation claim.

B. Defendant Henri's Motion for Summary Judgment. [ECF No. 114]

Plaintiff also claims that Defendant Henri was deliberately indifferent to his serious medical needs. [ECF No. 13]. Defendant Henri's separately filed Motion for Summary Judgment exclusively challenges the merits of the constitutional claim. [ECF No. 114].

*i. Substantive Law—Deliberate Indifference to Serious Medical Needs*

The Eighth Amendment of the United States Constitution forbids "cruel and unusual punishments." U.S. Const. amend. VIII. A state actor's "deliberate

indifference to serious medical needs of prisoners" fits into that category of punishments deemed cruel and unusual. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). Although pre-trial detainees, like Plaintiff, are subject to the Fourteenth Amendment's Due Process Clause, the standard for pretrial detainees and prisoners is the same. *See Burnette v. Taylor*, 533 F.3d 1325, 1330 n.4 (11th Cir. 2008).

To prevail on a deliberate-indifference claim, a plaintiff must show: (1) a serious medical need; (2) deliberate indifference to that need; and (3) causation between that indifference and the injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

"[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (1994) (citations omitted), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *see also Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007). "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

As for determining what conduct or lack of conduct qualifies under the deliberate indifference component, plaintiffs must satisfy three requirements: (1)

27

subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence. *See Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016).

Causation, the final requirement for a deliberate indifference claim, requires a link between the injury and the constitutional violation. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). In other words, the unconstitutional act must be a proximate cause of the injuries, *see LaMarca v. Turner*, 995 F.2d 1526, 1538-39 (11th Cir. 1993), or should otherwise show the defendant's personal participation in the constitutional violation. *Goebert*, 510 F.3d at 1327.

To illustrate the high bar of such a claim, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Similarly, a simple difference in medical opinion between a prison's medical staff and the inmate as to the inmate's diagnosis or course of treatment cannot support a deliberate indifference claim. *See id.* Once an inmate receives medical care, courts are reluctant to question the adequacy of medical care provided to the inmate. *See, e.g.*, *Harris*, 941 F.2d at 1507; *see also Lloyd v. Van Tassell*, 318 F. App'x 755, 760 (11th Cir. 2009).

### ii. Analysis

In the Amended Complaint, Plaintiff alleged that he told Defendant Henri that the cuts on his face would not stop bleeding and that he believed his ribs were broken

after the incident. [ECF No. 13 at 9-10]. According to Plaintiff, despite being told this, Defendant Henri "failed to write any event report" or otherwise order for emergency medical treatment [*Id.* at 9-10].

The Court need only address whether Defendant Henri acted with deliberate indifference, as there is no genuine issue of material fact that Plaintiff could not meet this element at trial.

In his affidavit, Defendant Henri swore that he cleaned the blood off of Plaintiff's face, documented Plaintiff's facial injuries, and used an ointment to block any bleeding. [ECF No. 114-1 at 2]. Defendant Henri acknowledged that Plaintiff reported pain. [*Id.*]. Based on his visual observations of Plaintiff, he did not order x-rays or emergency services with a doctor. [*Id.*]. However, Defendant Henri returned to check on Plaintiff's pain during Defendant Henri's "medicine rounds." [*Id.*]. He gave Plaintiff three Motrin for pain management and provided him with an ice pack. [*Id.*]. According to Defendant Henri, he advised Plaintiff to write a sick call request to see a doctor if his symptoms worsen or do not diminish within that day or during the week. [*Id.*].

Plaintiff did not address whether Defendant Henri followed up with him. [ECF No. 124]. Had he done so, he would have contradicted his deposition testimony where he admitted Defendant Henri provided him with Motrin, an ice pack, and advised him to file a sick call request one hour after Defendant Henri's initial

29

treatment. [ECF No. 114-3 at 96-97, 127]. Those facts are now undisputed. *See* Fed. R. Civ. P. 56(e)(2).

With the evidence viewed in Plaintiff favor, it appears he merely disagrees with Defendant Henri's medical decisions. Of course, a prisoner's disagreement with medical staff about the course of treatment or diagnosis will not support a deliberate indifference claim. *See, e.g.*, *Harris*, 941 F.2d at 1507; *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

And "whether an X-ray … is indicated is a classic example of a matter for medical judgment." *See Estelle*, 429 U.S. at 107. "At most [such errors amount to] medical malpractice[.]" *Id.*; *see also Tucker v. Busbee*, 619 F. App'x 868, 870 (11th Cir. 2015) ("Negligence in diagnosing or treating a medical condition, including an inadvertent failure to provide adequate medical care, does not state a valid claim for deliberate indifference") (internal quotation marks omitted).

The decision to refer an inmate to a doctor or specialist is also a matter of medical judgment. *See, e.g.*, *Tucker*, 619 F. App'x at 871. To find otherwise, the medical decision would have to be "so cursory as to amount to not treatment at all" or otherwise be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hines v. Wexford Health Sources, Inc.*, 786 F. App'x 913, 918 (11th Cir. 2019) (collecting cases) (internal citations omitted).

Defendant Henri's undisputed conduct hardly meets that standard. At best, Plaintiff did not receive the best healthcare; however, Plaintiff is only entitled to constitutionally adequate treatment—a far lower standard. *See, e.g.*, *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) ("[T]he Constitution doesn't require that the medical care provided to prisoners be 'perfect, the best obtainable, or even very good.'"); *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) ("A complaint that a physician has been negligent in diagnosing a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Plaintiff also appeared to allege that Defendant Henri knew or participated in a cover up of the Defendant Officers' application of force because he was "oddly" waiting for Plaintiff soon after force was applied. [ECF No. 13 at 9-10]. As that articulation of his claim would still require Plaintiff to show the failure to order emergency medical services or x-rays was conduct beyond mere negligence on summary judgment, Defendant Henri would still be entitled to summary judgment. Plaintiff's speculation that Defendant Henri saw surveillance footage of the Defendant Officers entering his cell is likewise not a basis to grant summary judgment because the only claim proceeding against Defendant Henri is with respect to the medical treatment he actually provided. And, as already stated, the treatment option he provided was constitutionally adequate.

In sum, there is no genuine issue of material fact regarding Defendant Henri's conduct and Plaintiff cannot prove that the medical treatment Defendant Henri provided was constitutionally inadequate as a matter of law. Defendant Henri's Motion should, therefore, be granted. [ECF No. 117].

## V. Conclusions and Recommendations

Based on the foregoing, it is recommended that Defendant Henri's Motion for Summary Judgment be **GRANTED.** [ECF No. 114]. It is further recommended that the Defendant Officers' Motion for Summary Judgment be **GRANTED IN PART,** so that the claim of retaliation against Defendant Quest is no longer part of this action, and the Motion be **DENIED IN PART** with respect to all other claims against the Defendant Officers. [ECF No. 117]. Accordingly, this case should proceed to trial on Plaintiff's claims of excessive force and on the uncontested failure to intervene claims against the Defendant Officers.

Objections to this Report may be filed with the District Court Judge within fourteen days of receipt of a copy of the Report. Failure to file timely objections shall bar Plaintiff from a *de novo* determination by the District Court Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Signed this 8th day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Steven Douglas Sherman
      L50862
      Walton Correctional Institution
      Inmate Mail/Parcels
      691 Institution Road
      De Funiak Springs, FL 32433
      PRO SE

      Alan David Danz
      Danz Law, PLLC
      11011 Sheridan Street
      Suite 314
      Hollywood, FL 33301
      954-530-9245
      Fax: 954-616-5738
      Email: danz@danzlaw.net

      Louis Reinstein
      Kelley Kronenberg
      10360 West State Road 84
      Ft. Lauderdale, FL 33324
      954-370-9970
      Fax: 954-382-1988
      Email: lreinstein@kklaw.com